# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-1354-RBJ-KMT

CHEVRON CORPORATION,

      Petitioner,

v.

ANDRES SNAIDER,

      Respondent.

---

## MOTION TO MODIFY *EX PARTE* ORDER AND PARTIALLY QUASH SUBPOENA UNDER 28 U.S.C. § 1782, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER UNDER FED. R. CIV. P. 26(c)

---

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ................................................................................................ 1

RULE 7.1 CERTIFICATION ................................................................................. 4

FACTUAL BACKGROUND .................................................................................. 4

    A.  Andres Snaider ..................................................................................... 4

    B.  The Lago Agrio And RICO Actions ...................................................... 4

    C.  Snaider's Pre-Judgment Involvement .................................................. 5

    D.  Snaider's Post-Judgment Work ............................................................ 6

    E.  Chevron's Failed Attempts To Obtain Discovery About Snaider ................ 7

    F.  The Foreign Proceedings........................................................................ 9

PROCEDURAL BACKGROUND............................................................................ 12

LEGAL FRAMEWORK ........................................................................................ 12

ARGUMENT........................................................................................................ 14

    A.  Requests Indiscriminately Seeking Essentially All Snaider Chevron-Related Documents (Nos. 21, 23, 29) ......................................... 14

    B.  Request Seeking Snaider's Compensation (No. 22) ................................. 24

    C.  Requests Concerning Funders And Service Providers (Nos. 3, 6-21, 28) ........ 24

    D.  Requests Regarding Alleged Misconduct In The Lago Agrio Action (Nos. 24-27)...... 26

    E.  Requests Relating To The Gibraltar Action (Nos. 1-2, 4-6) ......................... 28

CONCLUSION...................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) ...................................... passim

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 U.S. Dist. LEXIS 102821 (S.D.N.Y Sept. 13, 2013) ............................................................................................................ 22, 23

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 U.S. Dist. LEXIS 36353 (S.D.N.Y. Mar. 15, 2013) ............................................................................................................ 20, 22

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 234 (2d Cir. 2011) ........................................ 4, 5, 7, 21

*Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047, 2010 U.S. Dist. LEXIS 55049 (D. Colo. May 25, 2010) ................................................................................................ 16

*Echostar Comm'ns Corp. v. The News Corp. Ltd.*, 108 F.R.D. 391, 394 (D. Colo. 1998) .......... 28

*General Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-769-MSK-KMT, 2014 U.S. Dist. LEXIS 91814, *3 (D. Colo. July 7, 2014) .......................................................................... 14

*In re Braga*, 789 F. Supp. 2d 1294, 1304 (S. D. Fla. 2011) ......................................... 16

*In re Chevron Corp.*, 633 F.3d 153, 166-67 (3d Cir. 2011) ......................................... 22

*In re Grand Jury Proceedings*, 857 F.2d 710, 713 (10th Cir. 1988) ............................ 20

*In re Grand Jury Subpoenas,* 144 F.3d 653, 660 (10th Cir. 1998) ............................. 20

*In re Perez Pallares*, No. 10-cv-02528-PAB, 2010 U.S. Dist. LEXIS 115240, *4-5 (D. Colo. Oct. 20, 2010) ................................................................................................ 13

*In re Pinchuk*, Case No. 14-CIV-20047, 2014 U.S. Dist. LEXIS 43686 (S. D. Fla. Mar. 31, 2014) .................................................................................................. 24, 28, 29

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... passim

*Medcorp, Inc. v. Pinpoint Techs., Inc.*, 2009 U.S. Dist. LEXIS 66405 *11-12  (D. Colo. July 14, 2009) ............................................................................................................ 28

*Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) ............................... 22

*Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) ........ 13

*United States v. Zolin*, 491 U.S. 554, 572 (1989) ...................................................... 22

*Yaiguaje v. Chevron Corp.*, 118 O.R. (3d) 1 ...................................................... 11, 12

**Statutes**

28 U.S.C. § 1782 .................................................................................................. 1, 7, 13

**Other Authorities**

ARGENTINA COD. PROC. CIV. Y COM. § 333 .................................................................. 23

ARGENTINA COD. PROC. CIV. Y COM. § 365 .................................................................. 23

**Rules**

Federal Rules of Civil Procedure 26 .......................................................................... passim

Federal Rules of Civil Procedure 45 ...................................................................... 4, 12, 14, 26

## INTRODUCTION

This is a 28 U.S.C. § 1782 proceeding in which the world's twelfth largest corporation seeks to impose on a single Colorado resident the unfair task of responding to 31 extremely broad document demands. Most of the documents it seeks are irrelevant to the issues in the foreign proceedings for which it purportedly wants discovery. The other documents it can and should get from the parties to those proceedings.

In its *ex parte* petition filed with this Court on May 14, 2014, Chevron relies on a finding by the Southern District of New York that Steven Donziger, a New York lawyer, is liable under RICO for procuring through fraud and other misconduct a February 2011 Ecuadorian judgment against Chevron for damage to the Amazon Rainforest (the "Lago Agrio Judgment" or "Judgment"). *See* Doc. 2 (Chevron's Memorandum) at 4-12; *see generally Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) (the "RICO Action"). It says this ruling should open the gates of discovery from Respondent Andres Snaider. Doc. 2 at 4-12.  Chevron does not tell this Court, however, that *four times* in the RICO Action it sought discovery concerning Snaider. Each time, Judge Lewis A. Kaplan denied or significantly limited the discovery. The court specifically rejected Chevron's attempts to get what it seeks here: documents about its opponents' efforts to enforce the Judgment in other countries. It did that because Chevron's requests (a) did not bear on whether the Judgment was procured improperly; (b) were "broad as all outdoors"; and (c) sought documents that likely were protected by the work product doctrine. Ex. A at 17:15. With selective information, Chevron persuaded this Court to do *ex parte* what Judge Kaplan refused. Fully informed, the Court should follow Judge Kaplan's lead, modify its *ex parte* order, and quash Chevron's subpoena, except as discussed below.

1

Chevron tries to justify its petition by claiming that Snaider was "instrumental" to Donziger's conspiracy. Doc. 2 at 12-14. But Judge Kaplan presided over most aspects of the RICO Action for three years, including personally handling countless discovery issues; conducted a seven-week trial; and wrote a 320-page opinion setting forth the evidence of the alleged conspiracy in extraordinary detail. He identifies over 100 actors from co-conspirators to minor players. *And he does not even mention Andres Snaider. See Chevron*, 974 F. Supp. 2d at 383-705. That is only logical because as Chevron knows from the massive discovery it obtained in connection with the New York and Ecuadorian cases, Snaider did not work in any capacity on the Lago Agrio matter until *after* the Judgment. Even then he never was involved in the case in Ecuador. Rather, he was hired as an attorney and litigation consultant, first for Russell DeLeon's company Torvia Ltd., then, through Snaider's company Nextant LLC, for the indigenous Ecuadorian plaintiffs (the "Lago Agrio Plaintiffs" or "LAPs"), to advise his clients regarding international aspects of the Judgment, particularly strategy regarding jurisdictions in which the Judgment might be enforced. The only pre-Judgment "involvement" Chevron can muster is Snaider's (a) having re-connected by email his two law school classmates, Donziger and DeLeon, *five years before the Judgment*, when Snaider happened to be living in Ecuador and Donziger mentioned that he was looking for funding for a documentary film (not the litigation itself) and (b) exchanging periodic emails with Donziger. *See* Doc. 2 at 12-14.

Faced with Judge Kaplan's rulings, Chevron claims it is seeking evidence for use in actions pending in Brazil, Argentina, and Gibraltar. *See id.* at 1. But Chevron's own pleadings in those cases admit that the issues there are the same as in the RICO Action. On July 2, 2014, for example, Chevron amended its Gibraltar pleading to say that "[t]he underlying unlawful acts set

out in these Particulars of Claim are *materially identical to those relied on by Chevron and determined in its favour in the RICO Judgment.*" Ex. B, ¶ 29 (emphasis added). Just as Judge Kaplan rejected Chevron's attempts to use the RICO Action to discover information not relevant to that litigation, therefore, this Court should reject Chevron's new tack of trying to use the foreign proceedings as a hook to do the same. While Chevron obviously wants to gain advantage by peering inside its opponents' enforcement, funding, and other litigation activities, most of the information it seeks has no bearing on the proceedings on which its § 1782 petition ostensibly is based.

Although Snaider believes Chevron already has the pre-Judgment documents relating to his contact with the Lago Agrio matter that are in his possession from its well-publicized discovery of Donziger, he has agreed to produce those documents to Chevron. The real target of Chevron's petition, however—Snaider's post-Judgment work—is another story. Chevron's 31 document demands seek nearly every document Snaider has regarding every Ecuador-related Chevron matter anywhere in the world. These demands are not remotely tailored to the issues in Brazil, Argentina, and Gibraltar. Significantly, most of Snaider's documents concern his work for his clients. Responding would require painstaking review and logging of thousands of documents for privilege and work-product protection. Complicating matters, many of the documents are in Spanish, so for those documents Snaider would have to incur the cost of having them translated before counsel even could begin privilege review. This all adds up to an unfair and unjustified burden on Snaider.

In short, Chevron cannot satisfy the requirements of § 1782. In addition, the factors in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) and Federal Rules of Civil

Procedure 45 and 26 weigh against its petition. Snaider requests, therefore, that the Court modify its *ex parte* order and quash Chevron's subpoena, or alternatively issue a protective order precluding Chevron's requested discovery, except as to information about the Lago Agrio Action that Snaider received or generated before the Judgment.

## RULE 7.1 CERTIFICATION

Counsel have conferred regarding this motion and, more generally, the proper scope of discovery from Snaider. Snaider has agreed to produce pre-Judgment documents. As discussed below, Chevron has made a few cosmetic changes to its subpoena that do not materially change the substance or scope of its requests. Chevron opposes the motion.

## FACTUAL BACKGROUND

### A.    Andres Snaider

Andres Snaider is an American citizen who was born in Ecuador. Declaration of Andres Snaider, Ex. C, ¶¶ 2-3. His family moved to the United States when he was three years old. *Id.* ¶ 3. Aside from a brief period from mid-2006 to mid-2008, he has lived here ever since. *Id.* ¶ 4.

Snaider is a graduate of Harvard Law School where he was a classmate of Donziger and DeLeon. *Id.* ¶ 5. He maintains an active law license in Texas. *Id.* ¶ 6. He is a founding member and manager of Nextant LLC, a five-member Houston-based consulting firm. *Id.* ¶ 7. Nextant provides consulting services to companies that want to expand into or within Latin America. *Id.*

### B.    The Lago Agrio And RICO Actions

As at least one court has put it, the story of the Lago Agrio Action is "the most extensively told story in the history of the American federal judiciary." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 234 (2d Cir. 2011). For purposes of this motion, we provide only a brief

summary of that case and the subsequent litigation between Chevron and Donziger, addressing as necessary those aspects of the litigations that bear on Mr. Snaider.

The Lago Agrio Action commenced in May 2003 when a group of plaintiffs from the Lago Agrio region  of Ecuador sued Chevron for damages and remediation for environmental harm caused by Chevron's predecessor, Texaco, Inc.  *See id.* at 235-36.  The litigation went on for nearly a decade until February 14, 2011, when the Ecuadorian court found for the LAPs and awarded a judgment of more than $17 billion—$8.6 billion in compensatory damages and $8.6 billion in punitive damages "to be added unless Chevron apologized within fourteen days of the opinion's issuance." *Id.*  Chevron did not apologize. *Id.*

On February 1, 2011, just before the Lago Agrio court issued its judgment, Chevron sued Donziger and others in the Southern District of New York, alleging, among other things, that the Lago Agrio Judgment was obtained (or about to be obtained) by fraud.  *See Chevron*, 974 F. Supp. 2d at 384.  On March 4, 2014, Judge Kaplan found for Chevron in an extensive opinion explaining his conclusion that Donziger and others had "corrupted the Lago Agrio case." *Id.*

After the Lago Agrio but before the RICO Judgment, an Ecuadorian appellate court conducted a *de novo* review of the environmental-damage evidence—excluding evidence potentially tainted by the misconduct Chevron alleged—pursuant to Ecuador's civil law justice system. On January 3, 2012, that court ruled that the evidence warranted the conclusion that Chevron was responsible for the damage. *See* Ex. D, pp. 8, 9-11. Largely for that reason, the RICO Judgment is now on appeal to the Second Circuit.  *See* Ex. E.

C.    **Snaider's Pre-Judgment Involvement**

Chevron implies that Snaider participated in the conspiracy it alleges regarding the Lago

Agrio Action. *See, e.g.*, Doc. 2 at 12 ("Snaider's involvement was key to securing the financing which allowed Donziger and the other LAPs' representatives to perpetuate this scheme even after the truth about the fraudulent and criminal conduct began to emerge."). But the evidence does not support Chevron's implication. In 2006, Snaider was living with his family in and working from his native Ecuador. Snaider Dec. ¶ 8. While there he became reacquainted with his former classmate Donziger, who was working on the Lago Agrio Action. *Id.* ¶ 9. Donziger mentioned to Snaider that he was looking for funding for a film that would document the LAPs' plight. *Id.* ¶ 10. Knowing that their classmate DeLeon was a wealthy businessman with an interest in films, Snaider suggested that Donziger contact him. *Id.* ¶ 11. Snaider then connected the two via email. *Id.* ¶ 12; *see also* Doc. 2 at 12. DeLeon apparently met with Donziger and invested in the film. Doc. 2 at 13. Later, DeLeon helped fund the Lago Agrio Action. Ex. B at ¶¶ 57-59.

Insinuations aside, Chevron's factual account is consistent with this one. Even it admits that after the introduction, all communication with DeLeon about funding *Crude* was done by Donziger, who only "kept Snaider in the loop." Doc. 2 at 13. Chevron also admits that although Donziger offered Snaider a finder's fee for connecting him to DeLeon, Snaider never received one, writing: "I did this to help you and not as a business." Doc. 3-90; Doc. 2 at 13. Chevron has supplied no evidence that Snaider played any role in, including any funding of, the Lago Agrio Action itself. Its references to Snaider as "key" and "instrumental," therefore, are bogus.

### D.    Snaider's Post-Judgment Work

Following the Judgment, Torvia hired Snaider to advise it about legal developments in the case. Snaider Dec. ¶ 13. In addition, the LAPs hired Nextant as a litigation consultant to work

on strategy and planning related to potential international enforcement actions and the proceeds

of such actions. *Id.* ¶ 14. Later, the LAPs had Nextant help their Ecuadorian counsel track the

complicated RICO case. *Id.* ¶ 15. Nextant stopped working for the LAPs in mid-2013. *Id.* ¶ 16.

### E.   Chevron's Failed Attempts To Obtain Discovery About Snaider

When the RICO Action began in early 2011, Chevron already had gotten discovery from

scores of witnesses on two continents. For use in the Lago Agrio Action

> Chevron launched dozens of discovery proceedings pursuant to 28 U.S.C. § 1782
> throughout the United States, an effort the Third Circuit aptly characterized as "unique in
> the annals of American judicial history." Through these proceedings—which have
> resulted in at least fifty orders and opinions from federal courts across the country—
> Chevron gained access to an extraordinary quantity of material, including all of
> Donziger's litigation files.

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 236 (2d Cir. 2012) (quoting *In re Chevron Corp.*, 650

F.3d 276, 282 n.7 (3d Cir. 2011)). Chevron also sought discovery from several dozen witnesses

in the RICO Action itself. *Chevron*, 974 F. Supp. 2d at 384. Yet even with the breadth of the

evidence Chevron obtained and even in the face of allegations of a far-reaching conspiracy,

Judge Kaplan limited Chevron's discovery when that discovery concerned Snaider.

Chevron's attempts to get discovery about Snaider began with its subpoena to the law

firm Patton Boggs, which had joined the Lago Agrio Action on behalf of the LAPs in 2010.

Chevron sought "[a]ll documents related to Andres Snaider" and "[a]ll documents related to

Nextant." Ex. F, at 64-71. Patton Boggs objected on several grounds, including that the requests

impermissibly sought information regarding the LAPs' post-Judgment enforcement strategy:

> This Request facially purports to require Patton Boggs to disclose any and all information
> relating in any way to Andres Snaider, without limitation, and for the purpose of 'fishing'
> through Patton Boggs' files for information on pending or future enforcement
> proceedings, as Chevron apparently believes that Andres Snaider and his firm Nextant, is
> [sic] involved in crafting enforcement strategy….Chevron seeks to gain a tactical

> litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through over-broad requests for documents any information relating to pending or potential enforcement proceedings.

Ex. F at 65. Judge Kaplan sustained the objection. *See* Ex. G, ¶ 1; Ex. H at 34-36.

A few months later, Chevron served identical requests on Donziger. *See* Ex. I at 49-50. At a hearing, Judge Kaplan permitted discovery about Snaider only through the date of the Judgment.  He observed that the requests were "as broad as all outdoors." Ex. A at 17:15. He then ruled that any post-Judgment documents would relate to enforcement and likely be protected by the work product doctrine. *See* Ex. A, at 18:1-5 (observing that any material that concerns enforcement will "certainly…be met with a claim that this is material prepared in anticipation of litigation which, initially, seems to me probably right and in some cases at least it's likely to be what I'll loosely call opinion work product"); Ex. J, at Sched. 6, pp. l & li.

Undaunted, Chevron subpoenaed Snaider directly. Doc. 2 at 18 n.8. But the court quashed the subpoena as untimely. Doc. 3-138. Chevron then moved to add Snaider as a deponent. Ex. K at 2. It claimed, as it does here, that Snaider had "assume[d] the role of coordinating the legal strategy of the case in the United States" and that he played an "important role in Defendants' scheme." *Id.* at 5; *see* Doc. 2 at 16-17. The court denied the motion, finding Chevron's arguments "not very persuasive." Ex. L. Ultimately, after a trial in which it heard from 68 witnesses and received thousands of exhibits, the court issued an opinion comprising more than 320 Federal Supplement pages detailing its findings of fraud and extortion. *Chevron*, 974 F. Supp. 2d at 383-705. It does not mention Snaider or Nextant once. *See id.*

In a footnote to its petition here, Chevron mentions only the out-of-time subpoena, creating the impression that Judge Kaplan did not address the scope of Snaider-related discovery.

8

*See* Doc. 2 at 18 n.8. As this discussion shows, that is not true. Snaider's alleged involvement was raised and rejected by a court that had full opportunity to consider the issues. Judge Kaplan simply refused to let Chevron use the discovery process for non-case purposes, especially to get inside the LAPs' enforcement strategy. No reason exists to revisit his conclusions.

### F. The Foreign Proceedings

The purported purpose of Chevron's petition is to obtain evidence for use in three foreign actions (the "Foreign Proceedings"): (1) an action in Brazil seeking recognition of the Judgment, (2) a similar action in Argentina, and (3) a suit against DeLeon and Torvia in Gibraltar (the "Brazil," "Argentina," and "Gibraltar Actions"). *See* Doc. 2 at 18-20; Doc. 3-128, 3-129, 3-130.[1]

#### 1. Brazil

The LAPs filed the Brazil Action, called an "exequatur request," on June 27, 2012. Doc. 2 at 19. Chevron filed its opposition on March 11, 2013. *Id*. Chevron challenges the exequatur request on several grounds, including lack of jurisdiction, lack of *res judicata*, and violation of Brazilian public policy. *See* Ex. M at 7-8 (indexing arguments). Most of its opposition is devoted to the last ground, the crux of which is that the court should not enforce the Judgment because Chevron was denied a fair trial in Ecuador:

> [T]his Court of Appeal…should refuse to recognize an Ecuadorian judgment which was issued in judicial proceedings where fundamental guarantees of fair trial were not respected, which refusal would preserve both national public policy and national sovereignty.

*Id.* ¶ 117; *see also id.* ¶ 202 ("[Chevron] was…made aware [through discovery in the Lago Agrio

---

[1] Documents 3-129 and 3-130, which are exhibits to the Declaration of Allison Kosteka (Doc. 3) are excerpts from Chevron's Brazil and Argentina opposition papers. Chevron's counsel provided complete copies of each to undersigned counsel. Exhibit M contains additional pages from the Brazil opposition. Exhibit N contains additional pages from the Argentina opposition.

and RICO Actions] of several irregularities that prevent recognition of the Ecuadorian judgment in Brazil….”). In describing the conspiracy it alleges led to the Judgment, Chevron relies on Judge Kaplan’s preliminary findings and the conclusions of other federal courts in which it filed § 1782 petitions. *See, e.g., id.* ¶ 203 (“It is stressed that there are several decisions from the U.S. Courts that acknowledge the examples of fraud discovered in the Lago Agrio Action, which are addressed in specific terms, listed below.”). Nowhere does Chevron assert that any post-Judgment misconduct occurred—in particular, in the filing of enforcement actions itself—such that the Brazilian court should deny enforcement. *See, e.g., id.* ¶¶ 111-126.

### 2. Argentina

The LAPs filed the Argentina Action on November 21, 2012. Doc. 2 at 19. Chevron filed its opposition on February 27, 2014. *Id.* As in Brazil, Chevron’s lengthy opposition is substantially devoted to arguing that recognizing the Judgment would violate public policy because it was procured by fraud. *See* Doc. 3-130 at 1-2; *see also* Ex. N ¶ 40 (listing among arguments to be presented that “[t]he Lago Agrio Case is a proceeding which conceals a real fraud on the law committed against Chevron Corporation; [and] the Judgment also fails to comply with Article 2(f) of the CIDIP II requiring that ‘the parties had an opportunity to present their defense,’ since the judicial proceeding in Ecuador, in which the Judgment was rendered, is tainted by fraud, extortion, and bribery”). Chevron submitted a large quantity of evidence with its opposition. *Id.* ¶¶ 159-174. As in Brazil, it contends that Judge Kaplan’s findings make its defense a *fait accompli. See, e.g., id.* ¶ 251 (“[I]t has also been *proven that the LAPs and their representatives committed fraud* against Chevron Corporation….”) (emphasis in original). Here too, Chevron does not contend that post-Judgment misconduct is cause for the court to deny

enforcement. *See id.* ¶¶ 58-61, 250-399.

### 3.   Gibraltar

Chevron commenced the Gibraltar Action by filing Particulars of Claim (a complaint) against DeLeon and Torvia on December 17, 2012. Doc. 2 at 17. The defendants filed a motion to strike (equivalent to a motion to dismiss), which the court denied on March 14, 2014. Doc. 3-5. Chevron amended its particulars on July 2, 2014. Ex. B. It alleges that DeLeon and Torvia are liable for conspiracy and unlawful interference with economic interests because they funded the Lago Agrio Action and a "global pressure campaign," purportedly with knowledge of Donziger's fraud and extortion. *Id.* ¶¶ 138-142. Leaving no doubt that the case is based on the same conduct as the RICO Action, Chevron says:

> The underlying unlawful acts set out in these Particulars of Claim are materially identical to those relied on by Chevron and determined in its favour in the RICO Judgment. The RICO Judgment is therefore of key relevance to these proceedings.

*Id.* ¶ 29. The defendants filed their statement of defence (answer) on July 30, 2014. Chevron has not replied to that statement, and the court has set no disclosure (discovery) schedule.

### 4.   Canada

Interestingly, Chevron's petition omits a third enforcement action, in Canada. On December 17, 2013, the Ontario Court of Appeal reversed a lower court decision that had stayed that action. *See Yaiguaje v. Chevron Corp.*, 118 O.R. (3d) 1, 3-4 (Dec. 17, 2013). The court acknowledged Chevron's position "that the [Ecuadorian] trial judgment was obtained through fraud, bribery and other illegal means." *Id.* at 11. It also acknowledged the RICO Action. *Id.* at 12. But it held that "the Ecuadorian plaintiffs should have an opportunity to attempt to enforce the Ecuadorian judgment in a court where Chevron will have to respond on the merits":

> Even before the Ecuadorian judgment was released, Chevron, speaking through a spokesman, stated that Chevron intended to contest the judgment if Chevron lost. He said: "We're going to fight this until hell freezes over. And then we'll fight it out on the ice." Chevron's wish is granted. After all these years, the Ecuadorian plaintiffs deserve to have the recognition and enforcement of the Ecuadorian judgment heard on the merits in an appropriate jurisdiction. At this point, Ontario is that jurisdiction.

*Id.* at 18-19. Chevron has appealed to the Canadian Supreme Court.

## PROCEDURAL BACKGROUND

After this Court issued its *ex parte* order, Chevron served Snaider with a document subpoena for June 11 and a deposition subpoena for June 25, 2014. Counsel then conferred about several matters, including the possibility that Snaider would move to quash. To allow Snaider time to prepare these papers, Chevron withdrew its subpoenas and issued a new document subpoena for July 11. It later withdrew that subpoena and issued a new one for August 29. This motion is therefore timely. *See* Minute Order, Aug. 8, 2014 (Doc. 20). The parties have agreed that any deposition will await this motion's resolution and any document production.[2]

## LEGAL FRAMEWORK

A district court may order discovery for use in a foreign proceeding when three statutory requirements are met: (1) the person from whom discovery is sought resides or is found in the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the

---

[2] Because Chevron had not yet confirmed its tentative agreement regarding dates and because of ambiguity in Federal Rules 45(d)(2)(B) and 45(d)(3)(A), out of an abundance of caution Snaider objected to the first subpoenas on June 4, 2014. Counsel should have made clear in those objections that they were based on the detailed reasons set forth in this motion to quash. The Court struck the objections without prejudice for lack of detailed explanation.

For the same reasons and to the same extent he moves to quash, Snaider objects to Chevron's subpoenas, including insofar as they seek documents protected by the attorney-client privilege and work product doctrine. If the Court does not quash Chevron's subpoena as this motion requests, Snaider will produce a log setting forth his privilege assertions pursuant to § 1782.

12

application is made by a foreign or international tribunal or "any interested person." 28 U.S.C. §

1782(a). If the petitioner satisfies these conditions, the court may, but need not, allow discovery.

*Intel*, 542 U.S. at 263 ("[A] district court is not required to grant a § 1782(a) discovery

application simply because it has the authority to do so.") (citation omitted). The parties do not

dispute that the first and third requirements are satisfied. They do dispute the second.

  If the court finds all three requirements satisfied, to determine whether discovery *should*

proceed, it must consider these discretionary factors: (1) whether the person from whom

discovery is sought is a participant in the foreign proceeding; (2) the receptivity of the foreign

tribunal to federal-court assistance; (3) whether a request conceals an attempt to circumvent

foreign proof-gathering restrictions; and (4) whether a request is unduly intrusive or burdensome.

*Id.* at 264-65. In no event can a person "be compelled to give his testimony or statement or to

produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. §

1782. Initially, the petitioner can apply and the Court can make these determinations *ex parte*.

*E.g., In re Perez Pallares*, No. 10-cv-02528-PAB, 2010 U.S. Dist. LEXIS 115240 (D. Colo. Oct.

20, 2010). The *ex parte* procedure is justified, however, only "by the fact that the

[respondent]…will then have the opportunity to move to quash the discovery or to participate in

it." *Id.* at *5.

  Importantly, any discovery is subject to the Rules of Civil Procedure. *See Texas

Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 554 (5th Cir. 2012) ("[Section]

1782 does not establish a standard for discovery. Instead it provides for a threshold

determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in

accordance with the federal rules.") (quotation omitted). A motion to quash, therefore, also is

governed by Rule 45(d)(3), which directs a court to quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii) & (iv); *see, e.g.*, *General Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-769-MSK-KMT, 2014 U.S. Dist. LEXIS 91814 (D. Colo. July 7, 2014) (motion to quash non-party discovery granted when information sought was "overbroad, irrelevant, unnecessary, and was a fishing expedition designed to gain information…not for purposes of [the] litigation"). And it is governed by Rule 26(b)(2)(C), which provides that a court "must limit the frequency or extent of discovery otherwise allowed….if it determines that":

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

In addition, Federal Rule 26(c) provides that a court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

## ARGUMENT

Chevron's document requests can be analyzed in five groups.

### A.   Requests Indiscriminately Seeking Essentially All Snaider Chevron-Related Documents (Nos. 21, 23, 29)

Three demands ask, in substance, for essentially every document Snaider has regarding every aspect of every Ecuador-related Chevron matter anywhere in the world. They are:

- No. 21: "All DOCUMENTS related to the funding of actions seeking to enforce the

14

LAGO AGRIO JUDGMENT and all documents related to post-judgment proceedings in the LAGO AGRIO LITIGATION"

- No. 23: "All DOCUMENTS related to NEXTANT'S involvement in the LAGO AGRIO LITIGATIONS"

- No. 29: "All COMMUNICATIONS between YOU and LAGO AGRIO PLAINTIFF LAW FIRMS related to the CHEVRON LITIGATIONS."[3]

Number 23 alone indiscriminately seeks most Snaider Chevron-related documents, regardless of subject matter, as it seeks, without limit, all documents "related" to his company's "involvement" in "the LAGO AGRIO LITIGATION." LAGO AGRIO LITIGATION is defined to include not only the Ecuadorian proceedings but all international enforcement actions stemming from those proceedings. Broad terms like "related to" and "involvement" sweep in every aspect of those proceedings.[4] Because Snaider logically had to coordinate his litigation consulting work with other counsel, number 29 effectively asks for a large number of Snaider's work communications regardless of content. Number 21 originally asked for "[a]ll DOCUMENTS related to the enforcement of the LAGO AGRIO JUDGMENT." The altered language barely changes the substance, however, because, as noted, Chevron's definition of "LAGO AGRIO JUDGMENT" means this request still asks for all documents related in any way to any enforcement proceeding. It arguably does exclude documents about never-filed enforcement actions. But Requests 23 and 29 continue to cover those subjects anyway. If anything, Chevron's change to Request 21 is a tacit acknowledgment (perhaps because of Judge

---

[3] We use the request numbers from Chevron's modified subpoena, revised as of July 8, 2014.

[4] Chevron originally asked for all documents related to Nextant's involvement in "the CHEVRON LITIGATIONS." That term is defined also to include dozens of § 1782 actions, criminal cases, and other ancillary proceedings. Changing "CHEVRON LITIGATIONS" to "LAGO AGRIO LITIGATION" does not alter the scope of Chevron's subpoena because (a) Nextant was not involved in the ancillary proceedings in any event and (b) all such proceedings "relate" to the LAGO AGRIO LITIGATION nonetheless.

Kaplan's rulings) that it cannot properly ask for Snaider's post-Judgment enforcement documents. Yet, together, that is exactly what these requests demand: all Snaider post-Judgment Chevron-related documents, regardless of content, including every document related to the broad subject of enforcement.

### 1.   Chevron Has Not Shown These Requests Are For Use In A Foreign Proceeding

First and foremost, these requests fail the second requirement of § 1782, that the discovery be "for use in a proceeding before a foreign tribunal." To be for use in a foreign proceeding, information must be relevant to that proceeding. *See Intel*, 542 U.S. at 262 (purpose of § 1782 is to "assist foreign tribunals in obtaining relevant information"); *In re Braga*, 789 F. Supp. 2d 1294, 1304 (S. D. Fla. 2011) ("[A] § 1782 applicant is only entitled to discovery that is relevant to the foreign proceeding….") (citation omitted). Chevron's petition does not even attempt to explain how every Snaider document relating to enforcement, much less every document related to Nextant's "involvement," are relevant to the Brazil, Argentina, and Gibraltar Actions. Chevron's petition conspicuously refrains from discussing the issues those cases actually present and thus from explaining how the information it seeks are for use in those cases. *See generally* Doc. 2 at 18-20 (describing the Foreign Proceedings). This stands in contrast to, for example, its 2010 petition to this Court seeking discovery from Stratus Consulting, Inc. in connection with the Lago Agrio Action. *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047, 2010 U.S. Dist. LEXIS 55049, *3 (D. Colo. May 25, 2010). There, Chevron sought documents from an environmental consulting company based on its allegation that a court-appointed expert in the Lago Agrio Action, Richard Stalin Cabrera Vega ("Cabrera") had adopted Stratus's work as his own. *See* Ex. O at 1. Chevron pointed to evidence linking

16

Cabrera's report to work Stratus had done, for example, through side-by-side comparisons. *Id.* at 7-8. Thus, Chevron made clear how the discovery it sought was relevant to the pending foreign proceedings. It makes no remotely similar showing with respect to the Foreign Proceedings here.

The fact that the Brazil and Argentina Actions are "enforcement" proceedings does not mean that all documents that generically can be categorized as involving "enforcement" are relevant. Relevance in this context means for use in the foreign proceedings, which depends on the actual issues in the case. As discussed above, the Foreign Proceedings present the same issues as the RICO Action, namely, whether the LAPs and their counsel (allegedly using funds provided by DeLeon and Torvia in the case of the Gibraltar Action) *procured the Judgment improperly*. While Chevron obviously contends that the enforcement actions *lack merit* (because of the alleged improper procurement), it does not contend in the Foreign Proceedings that the LAPs' *conduct of the enforcement actions themselves* are grounds to deny enforcement.

In Gibraltar, Chevron similarly says that it seeks damages for losses sustained in a "tortious conspiracy" which "at its core [is] the dishonest and fraudulent prosecution of a claim against [Chevron] in the Republic of Ecuador…and a global public pressure campaign based on false evidence and misrepresentations." Ex. B ¶¶ 1-2. Again, it does not allege any misconduct in the prosecution of the enforcement actions. *Id.* ¶¶ 1-137. To be sure, Chevron claims that DeLeon, Torvia, and others intended to seek enforcement of any judgment the LAPs might obtain. *Id.* ¶ 7.3.1. But that cannot be in dispute—what good would a judgment be if it could not be enforced? In any event, Chevron's requests seek far more than discovery about the LAPs' intent to enforce the Judgment. They seek *where, how, and through whom* that intent has been manifested—the strategies and activities—which is not probative of any issue. That, again, is one

of the reasons Judge Kaplan rejected Chevron's attempts to use the RICO Action to obtain post-Judgment discovery about Snaider. *See* Part I.C above.

In its amended Gibraltar pleadings, Chevron did add allegations asserting that the "global pressure campaign" continued after the Judgment was issued in 2011. Ex. B. ¶ 6. Once again, however, it does not contend that asking foreign courts to recognize the Judgment is improper; after all, it is for those courts to decide whether to accept Chevron's arguments that recognition should be denied. Instead, Chevron claims that the "global pressure campaign" consists of things like "attacks against [it] in the media, protests and attacks at [its] shareholder meetings, public attacks on [its] executive management and board of directors, the malicious prosecution of Chevron's attorneys in Ecuador, and even pressure directed against analysts covering Chevron in the financial markets." Ex. B ¶ 6. But Chevron's document demands do not purport to address these matters in particular.

Actually, it is impossible at this point to determine what evidence is relevant and thus for use in Gibraltar because the Gibraltar court has not yet determined the course and scope of disclosure (discovery). Importantly, however, the Gibraltar judge warned that he will not tolerate misuse of Gibraltar's disclosure procedure:

> This Court will need to keep a close eye on the proceedings in order to ensure that they are not abused, that unjustified fishing exercises are not allowed and that the matter does not escalate out of control.

*Id.* ¶ 115. Given that the parties and the court will not set discovery parameters for some time, Chevron cannot yet show what evidence legitimately might be for use in Gibraltar. At a minimum, therefore, its requests related to Gibraltar are premature.

## 2.   The *Intel* And Federal Rules Factors Weigh Against Discovery

Even if some documents demanded in requests 21, 23, and 29 were for use in a Foreign Proceeding, the *Intel* and Federal Rules factors weigh against discovery.

### a.      The Requests Impose A Substantial Burden

Most important, the burden Chevron seeks to impose on Snaider is substantial. As explained, it seeks essentially every document he has regarding every Ecuador-related Chevron matter. Snaider has made a diligent effort to preserve all potentially-responsive documents. All told, he has preserved approximately 11 gigabytes of information. Declaration of Patricia Nelson, Ex. P, ¶ 4. Of this, approximately 35,000 files were created after the Judgment. *Id.* This translates to approximately 200,000 pages of documents, all of which would have to be reviewed for responsiveness and privilege. *Id.* ¶ 5.

Adding significantly to the burden is the fact that post-Judgment, Snaider was acting as an attorney and litigation consultant to two sets of clients so most responsive documents will be subject to some sort of privilege claim. Ex. C, ¶¶ 14-15. As a result, the documents would have to be reviewed and logged not only for responsiveness but privilege and work product. That process would be still more burdensome because an initial scan reveals that about one-third of the documents are in Spanish. Ex. P, ¶ 3. Before counsel could advise as to privilege or work product, therefore, either a significant number of documents would have to be translated or Snaider would have to read aloud each document to counsel.

### b.      Chevron's Invocation Of The Crime-Fraud Exception Increases The Burden

Chevron suggests that the burden would be reduced because the crime-fraud exception precludes Snaider from claiming privilege. *See* Doc. 2 at 23-27. This is wrong for two reasons. First, the exception does not apply. Second, even if it could apply, Chevron would have to assert

it and the Court would have to assess it on a document-by-document basis. This would magnify, not mitigate, the burden.

To invoke the crime-fraud exception, the party opposing privilege first "must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact." *In re Grand Jury Subpoenas,* 144 F.3d 653, 660 (10th Cir. 1998). Then, it must show that "the purpose of the communication was to further crime or an intended fraud." *In re Grand Jury Proceedings*, 857 F.2d 710, 713 (10th Cir. 1988); *see Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 U.S. Dist. LEXIS 36353, at *96 (S.D.N.Y. Mar. 15, 2013) (Kaplan, J.) ("[T]o invoke the crime-fraud exception, a party seeking disclosure must demonstrate that there is probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud.") (citations and quotations omitted).

Chevron asserts that Snaider "solicited funds from DeLeon that were used to bribe [an Ecuadorian judge]," Doc. 2 at 24, "participated in a scheme to block Chevron's discovery efforts in the RICO proceeding," *id.* at 25, and that "circumstances suggest" he was aware of the fraud alleged in the RICO Action. *Id.* These accusations are not remotely sufficient to establish probable cause that Snaider participated in a crime or fraud. For example, as explained, Snaider merely connected by email his classmates Donziger and DeLeon when Donziger said he was looking for funding for a film. *See* Part I.A. above. This does not come close to suggesting that Snaider participated in bribing an Ecuadorian judge. Nor is there probable-cause evidence that Snaider participated in a "scheme" to "block" Chevron in the RICO Action. And even if Snaider had been aware of Donziger's alleged fraud, it is neither a crime nor fraud to seek enforcement

of a court judgment—especially when, as here, the Ecuadorian appellate court ruled, among other things, that based on a *de novo* review of the LAPs' evidence of environmental damage, excluding all allegedly tainted information, Chevron was responsible for the environmental damage the court found. Ex. D, pp. 8, 9-11. As the Second Circuit held in reversing a preliminary injunction Judge Kaplan had issued early in the RICO Action prohibiting worldwide enforcement of the Judgment:

> The [Ecuadorian plaintiffs] hold a judgment from an Ecuadorian court. They may seek to enforce that judgment in any country in the world where Chevron has assets.

*Naranjo*, 667 F.3d at 245-46. It cannot have been crime or fraud for Snaider or anyone else to have taken the Second Circuit at its word.

As explained, despite the copious discovery Chevron obtained and presented in the RICO Action, Judge Kaplan did not mention Snaider even as a bit player in the Lago Agrio story, including, specifically, with respect to the court's bribery findings. *See Chevron*, 974 F. Supp. 2d at 282-285, 369, 403-417. Nor does Chevron mention Snaider as a supposed conspirator in its pleadings in the Foreign Proceedings. Notably, its only reference to Snaider in the Foreign Proceedings appears to be in the Gibraltar complaint, where, without referring to him by name, it says that DeLeon "was initially approached by Mr Donziger (through a mutual acquaintance) on or around 19 September 2006 about providing funding for and investing in the film *Crude*." Ex. B ¶ 55. Chevron's benign, anonymous, parenthetical reference to Snaider as Donziger and DeLeon's "mutual acquaintance" belies its attempt to smear Snaider here as a "solicitor" of funds to bribe an Ecuadorian judge. Chevron identifies numerous "significant dramatis personae" in Gibraltar, but Snaider is not among them. *See id.* ¶¶ 13-25.

Even if Chevron could establish probable cause that Snaider participated in a crime or

fraud, it still would have to show that *particular* communications were made in furtherance of it.

> [E]vidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception…because to establish the second element of the exception the party…invoking [it] bears the burden of making a prima facie showing that there were communications between the client and attorney in furtherance of that fraud.

*In re Chevron Corp.*, 633 F.3d 153, 166-67 (3d Cir. 2011). To establish this requirement, Chevron would have to ask this Court to review *in camera* the communications it claims were made in furtherance of the alleged crime or fraud. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) ("[A] district court may conduct an *in camera* review to determine the applicability of the crime-fraud exception, but only if the party requesting such a review makes a strong showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the documents may reveal evidence to establish that the crime-fraud exception applies.") (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). This is exactly what Judge Kaplan ordered in the RICO Action when Chevron sought documents from Patton Boggs. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 U.S. Dist. LEXIS 36353, *121-22 (S.D.N.Y. Mar. 15, 2013). Even though it found probable cause to believe that Patton Boggs participated in fraudulently procuring the Judgment, *see id.* at *48, the court did not hold that all of that firm's documents were subject to the crime-fraud exception; only documents concerning specific criminal or fraudulent conduct, like ghostwriting the Judgment, *potentially* were subject. *Chevron*, 2013 U.S. Dist. LEXIS 36353 at *111 (limiting subpoena to six subjects). As to those particular topics, Patton Boggs had to prepare a privilege log, Chevron had to challenge specific documents, and the court had to determine which documents were "in furtherance" of the crime or fraud. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 U.S. Dist. LEXIS 102821, *8-11 (S.D.N.Y Sept. 13, 2013) (order regarding results of *in camera* review). Ultimately, the court

held that the exception applied to only a small number of challenged documents. *Id.*

For all these reasons, the crime-fraud exception, if it could apply, would amplify, not lessen, the burden Chevron's demands create.

### c.  The Burden Is Undue

As explained in Part IV.A.1, Chevron cannot show that all of Snaider's Chevron-related documents are relevant to the Foreign Proceedings. Even if some subset of documents theoretically might be relevant, the demands' vast overbreadth makes them unduly burdensome as the burden described above far outweighs the requests' likely benefit in light of the issues at stake, especially considering that Snaider is simply an individual. *See* Fed. R. Civ. P. 26(b)(2)(c)(i) & (iii).

### d.  Argentina Would Not Receive The Requested Documents In Any Event

With respect to the Argentina Action, the second *Intel* factor also weighs against discovery because Chevron is precluded from submitting additional evidence of the sort it seeks from Snaider. As a general matter, under Argentine law, a party must submit all documents with its initial exequatur pleading. *See* Cod. Proc. Civ. y Com. § 333. Chevron has told Snaider's counsel that it has submitted to the Argentine court Judge Kaplan's March 2014 opinion. *See* Doc. 2 at 19. But that opinion did not exist when Chevron filed its Argentina opposition. Argentine law does not permit a party to develop and submit evidence that did exist at the time of the opposition. *See* Cod. Proc. Civ. y Com. § 365.

### e.  Chevron's Demands Are At Best Premature And At Worst An Attempt To Circumvent Foreign Proof-Gathering Restrictions

With respect to the Gibraltar action, Chevron's requests also may violate the *Intel* factor

regarding foreign proof-gathering restrictions. *See Intel*, 542 U.S. at 265. As explained, the Gibraltar court has said it will ensure "that unjustified fishing exercises are not allowed and that the matter does not escalate out of control." Doc. 3-5 at ¶ 115. Given the court's indication that it will control discovery and prevent abuse, Chevron's attempt to obtain broad discovery here appears to be an attempt to circumvent those restrictions. At best, it is premature. *See, e.g., In re Pinchuk*, Case No. 14-CIV-20047, 2014 U.S. Dist. LEXIS 43686, at *2 (S. D. Fla. Mar. 31, 2014) (staying § 1782 proceeding when, among other things, discovery could be premature "as the Cypriot Court has not narrowed or pinpointed the issues in dispute").[5]

### B.   Request Seeking Snaider's Compensation (No. 22)

Request No. 22 seeks all documents related to any thing of value Snaider has received or may receive related to his involvement in any Chevron Litigation. Snaider's compensation cannot possibly be probative of whether the Argentine and Brazilian courts should recognize the Lago Agrio Judgment. *See* Part IV.A.1. Nor, as discussed, is Snaider among the alleged conspirators in the Gibraltar case; he is simply the unnamed "mutual acquaintance" through whom Chevron says Donziger initially approached DeLeon regarding *Crude*. Ex. B ¶ 55. The most reasonable inference is that this request's real purpose is to help Chevron decide whether it wants to sue Snaider as it has DeLeon and others. This is a violation of Federal Rule 26(c) and an abuse of § 1782. *See Intel*, 542 U.S. at 262 (the purpose of § 1782 is to obtain information relevant to a foreign action).

### C.   Requests Concerning Funders And Service Providers (Nos. 3, 6-21, 28)

Several Chevron requests broadly seek all documents related to funding of the LAPs'

---

[5] Chevron's counsel has said to Snaider's counsel that some non-party disclosure has begun in Gibraltar. He did not indicate whether the Court has ruled on the scope of such disclosure.

worldwide litigation efforts and the compensation of anyone connected to the LAPs:

- Nos. 3, 6, 8: all documents related to Amazonia Recovery Limited or Newco
- No. 7: all communications with Joshua Rizack or The Rising Group
- No. 9: all documents related to GCG Holdings
- Nos. 10-12, 16: documents related to GT Nominees Ltd., GT Fiduciary Services Ltd., Grant Thornton Holdings Ltd., and the Grant Thornton Entities
- No. 13: all documents related to Kudu Holding Group Limited
- No. 14: all documents related to TC Payment Services
- No. 15: all documents related to H5 or Nicolas Economou
- No. 17: all documents related to Woodsford
- No. 18: all documents related to "any solicitation of funding for or investments in the CHEVRON LITIGATIONS"
- No. 19: all documents related to "any decision to fund, to continue to fund, or to terminate funding of or investment in any aspect the CHEVRON LITIGATIONS"
- No. 20: all documents related to "the allocation or distribution of, division of, interest in, or responsibility for any proceeds, revenue, award, penalty, cost, or expense related to the LAGO AGRIO LITIGATION, including DOCUMENTS related to any person who has any interest or shares in any distribution of any proceeds related to the LAGO AGRIO JUDGMENT"
- No. 21: all documents "related to the funding of actions seeking to enforce the LAGO AGRIO JUDGMENT"
- No. 28: all documents related to "the hiring, retention, payment of, or negotiation of any contract or agreement with any person to act on behalf of, advise, or consult with any of the LAGO AGRIO PLAINTIFF LAW FIRMS"[6]

Requests 18-21 and 28 in particular go far beyond the Foreign Proceedings.  Requests 18 and 19, for example, broadly seek all documents related in any way to "*any* solicitation of funding" and "*any* decision to fund…in *any* aspect the CHEVRON LITIGATIONS"—whether or not that funding involved DeLeon or Torvia. Request 20 similarly asks for all documents related to "*any* person who has *any* interest or shares in *any* distribution of *any* proceeds related to the LAGO AGRIO JUDGMENT"—whether or not they have anything to do with the Gibraltar defendants.

According to Chevron's counsel during the parties' meet-and-confer discussions, requests 6-17

---

[6] Chevron has withdrawn previous request 15, regarding The Rising Group, which is duplicative of request 7.

relate to "Amazonia Recovery Limited," a company that exists to hold and distribute funds raised for the Lago Agrio Action and distribute funds recovered from that enforcement. Once again, these requests do not purport to relate or be limited to DeLeon, Torvia, or the issues in the Foreign Proceedings. Notably, neither Snaider nor Nextant is or ever has been a member of Amazonia Recovery Limited. Ex. C, ¶ 17. Given Chevron's recent lawsuit against DeLeon and Torvia, these requests appear to be an attempt by Chevron to fish for other funders and service providers whom it may sue in the event Brazil, Argentina, and/or Canada does recognize the Judgment. This is not seeking evidence for use in the Foreign Proceedings but an attempt to gain tactical advantage *outside* those proceedings. It is, again, an undue burden on Snaider and an abuse of § 1782.

### D. Requests Regarding Alleged Misconduct In The Lago Agrio Action (Nos. 24-27)

Some requests do address alleged wrongdoing in the Lago Agrio litigation:

- No. 24: documents related to Charles Calmbacher
- No. 27: documents related to Cabrera
- No. 28: documents related to the "Post-Cabrera Cleansing Consultants" or the "Cleansing Expert Reports"
- No. 27: documents related to drafting of the Judgment[7]

Although technically potentially relevant inasmuch as one of Chevron's arguments in the Foreign Proceedings is the alleged fraud by which the LAPs procured the Judgment, the Court should reject these requests under *Intel* and Rules 45 and 26. As explained, Chevron obtained historic quantities of evidence about these topics in connection with the RICO and Lago Agrio Actions. Each is the subject of extensive findings by Judge Kaplan. *See Chevron*, 974 F. Supp 2d at 412-13 (findings regarding Calmbacher); 424-54 (Cabrera); 479-81 (the Cleansing Expert

---

[7] Chevron withdrew its request asking for all documents relating to the film *Crude*.

Reports); 501-513 (ghostwriting the judgment). Chevron has argued in all three Foreign Proceedings that those findings compel rulings in its favor. *See, e.g.,* Ex. B ¶ 30 ("[T]he findings of fact [in the RICO Action] provide the strongest possible support for [Chevron's] allegations of the fraudulent and unlawful actions carried out by the Conspirators, and…they will have *res judicata* or estoppel effect in relation to each of the Defendants."). Chevron cannot seriously argue that it needs or would use discovery from Snaider to litigate these issues in Brazil, Argentina, or Gibraltar. This is a classic example of unjustified cumulative discovery. *See* Rule 26(b)(2)(C)(i) (court must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit" considering, among other things "the importance of the discovery in resolving the issues"). Once again, these requests appear to be an effort at fishing for evidence to sue Snaider.

Chevron's revised subpoena purports to limit requests 24-26 through the qualifier that they only are asking for documents that "both (1) reflect statements by or to [Snaider], Steven Donziger, or Russell Deleon, for the purpose, in whole or in part, of soliciting investments or donations for the LAGO AGRIO LITIGATION or efforts to enforce the LAGO AGRIO JUDGMENT, and (2) refer or relate to" the subjects of the requests. But this added verbiage does not change the analysis. To the extent the requests refer to DeLeon they are duplicative of request number 1, which is discussed in the next section. To the extent they refer to Donziger they are cumulative and harassing for the reasons above. And to the extent these requests are intended to cover other statements by or to Snaider, they are of no conceivable use to the Foreign Proceedings. Once again, they appear to be an attempt to get *pre*-litigation discovery for a

potential action against Snaider. Under the *Intel* factors and especially Federal Rule 26(c), which precludes discovery designed to oppress and harass, this is inappropriate.

### E.      Requests Relating To The Gibraltar Action (Nos. 1-2, 4-6)

Finally, some requests do appear to relate to the defendants and issues in Gibraltar:

- No. 1: communications with DeLeon
- No. 2, 6: documents related to Torvia
- No. 4: documents related to Ruth Parasol (DeLeon's wife)
- No. 5: communications with Julian Jarvis (Torvia's lawyer)

The Court should quash these requests for different reasons. First, Chevron should seek this information from the parties before imposing a burden on a non-party. *See Echostar Comm'ns Corp. v. The News Corp. Ltd.*, 108 F.R.D. 391 (D. Colo. 1998) ("[T]he status of a person as a non-party is a factor which weighs against disclosure."); *Medcorp, Inc. v. Pinpoint Techs., Inc.*, 2009 U.S. Dist. LEXIS 66405  (D. Colo. July 14, 2009) ("With respect to discovery issued to non-parties, a party seeking discovery must satisfy a burden of proof heavier than the ordinary burden imposed by Rule 26 relating to discovery on any matter relevant to the subject matter involved in the pending action) (citing *Echostar*, 108 F.R.D. at 394); *see also In re Pinchuk*, 2014 U.S. Dist. LEXIS 43686 at *15 ("While there is no 'exhaustion' requirement for seeking discovery under § 1782, the District Court may, in its discretion, properly consider a party's failure to first attempt discovery measures in the foreign jurisdiction.") (quotation omitted). It does not appear that Chevron has even tried to get the information from DeLeon or Torvia.

This failure may be explained by the fact that the Gibraltar court has warned that it will not tolerate "unjustified fishing exercises."  Doc. 3-5 ¶ 115. By petitioning this Court before the Gibraltar court sets the scope of discovery, Chevron may hope to avoid an argument that it is seeking to circumvent the foreign court's proof-gathering restrictions. But trying to beat that

court to the punch is itself an evasion. With respect to these requests, therefore, the Court should defer ruling until the Gibraltar court determines the scope of discovery, including whether Chevron can obtain the requested information from the parties. *See Pinchuk*, 2014 U.S. Dist. LEXIS 43686, at *2 (staying § 1782 proceeding pending resolution of motion to strike because Cypriot court had not "narrowed or pinpointed the issues in dispute").

## CONCLUSION

For the reasons above, Snaider requests that the Court modify its *ex parte* order permitting discovery under § 1782 and quash Chevron's subpoena issued pursuant to that order except insofar as it seeks information generated on or before February 14, 2011. In the alternative, Snaider requests a protective order limiting Chevron's discovery in this fashion.

August 29, 2014

s/ Paul H. Schwartz
Paul H. Schwartz
Jacqueline Melmed
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO  80302
Phone:  (303) 530-3452
Fax:  (303) 530-4071
pschwartz@sgslitigation.com

**ATTORNEYS FOR RESPONDENT**
**ANDRES SNAIDER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of August, 2014, I served the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification via e-mail to:


Robert C. Blume
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
T: (303) 298-5700
F: (303) 298-5907
rblume@gibsondunn.com

*Attorneys for Petitioner Chevron Corporation*


<u>s/ Sarah B. Lee</u>